1 KING, HOLMES, PATERNO & SORIANO, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
2 SETH MILLER, ESQ., STATE BAR NO. 175130
SMILLER@KHPSLAW.COM
3 1900 AVENUE OF THE STARS, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
4 TELEPHONE: (310) 282-8989
FACSIMILE:  (310) 282-8903
5
Attorneys for Plaintiffs YOUNG MONEY
6 ENTERTAINMENT, LLC and DWAYNE
MICHAEL CARTER, JR.
7

8                      UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

| 11 YOUNG MONEY<br>ENTERTAINMENT, LLC and<br>12 DWAYNE MICHAEL CARTER, JR.<br><br>13                Plaintiffs,<br><br>14      vs.<br><br>15 UNIVERSAL MUSIC GROUP. INC.,<br>and SOUNDEXCHANGE, INC.,<br>16<br>                Defendants.<br>17<br>18 | CASE NO.<br><br>**COMPLAINT FOR:**<br>**(1) DECLARATORY RELIEF;**<br>**(2) INDUCEMENT TO BREACH<br>     CONTRACT;**<br>**(3) AIDING AND ABETTING<br>     BREACH OF FIDUCIARY<br>     DUTY;**<br>**(4) TORTIOUS INTERFERENCE<br>     WITH ECONOMIC<br>     ADVANTAGE**<br><br>**DEMAND FOR JURY TRIAL** |
| --- | --- |

19

20       Plaintiffs, YOUNG MONEY ENTERTAINMENT, LLC, ("Young Money

21 LLC"), and DWAYNE MICHAEL CARTER, Jr. ("Carter" or "Lil Wayne") (Young

22 Money LLC and Carter sometimes collectively referred to as "Plaintiffs"), for their

23 complaint against the Defendants, UNIVERSAL MUSIC GROUP, INC.

24 ("Universal") and SOUNDEXCHANGE, INC. ("SoundExchange") allege as

25 follows:

26 / / /

27 / / /

28 / / /

KING, HOLMES,
PATERNO &
SORIANO, LLP

4612.060/1007939.3                              1

**INTRODUCTION**

1.      Ignoring written assurances of ownership of and profits from some of the most successful recordings of the last decade, Universal has diverted tens of millions of dollars of profits owing to Lil Wayne to repay itself some of the more than One Hundred Million Dollars ($100,000,000) it advanced to Cash Money Records, Inc. ("Cash Money").

2.      Lil Wayne helped discover, develop, nurture and deliver to a joint venture he formed with Cash Money prolific and successful recording artists Drake, Nicki Minaj and Tyga.  For these services, Lil Wayne was to be rewarded by retaining a significant percentage of ownership of the recordings created by these talented artists along with the profits earned.  With Universal's knowledge of Lil Wayne's rights to partial ownership and profits from those artists, Universal and Cash Money entered into a series of agreements which, among other things, diverted Lil Wayne's substantial profits to repay debts of Cash Money.  As a result, 100% of the profits that should have been paid to Lil Wayne as a result of his ownership of Drake, Nicki Minaj and Tyga records have been seized by Universal to repay debts that were neither incurred by nor were the obligations of Lil Wayne.

**THE PARTIES**

3.      Plaintiff Carter is an internationally acclaimed, Grammy Award winning songwriter, rap artist, producer and entrepreneur.  Carter has demonstrated for many years a remarkable talent for discovering and developing new recording artists.  Plaintiff Carter is a citizen and resident of the State of Florida.

4.      Plaintiff Young Money LLC is a limited liability company organized under the laws of the State of Delaware with a principal place of business in Miami, Florida.

5.      Young Money LLC is the owner of the right to furnish to third parties the professional services of Carter, and also owns and controls an ownership interest in a record label joint venture of Carter with Cash Money (the joint venture is

KING, HOLMES,
PATERNO &
SORIANO, LLP

4612.060/1007939.3                                              2

1  hereafter described as "Young Money Label"), and an ownership of certain records

2  delivered by Carter to Cash Money for distribution, all more particularly described

3  below.

4        6.     Carter is the sole member of Young Money LLC. By reason of

5  Carter's Florida citizenship, Young Money LLC is a citizen of the State of Florida

6  for diversity jurisdiction purposes.

7        7.     Upon information and belief, Universal is a Delaware corporation, with

8  its principal place of business at 2220 Colorado Avenue, Santa Monica, California

9  90404, in this District. Universal is engaged in the business of recorded music,

10 music publishing and merchandising. Universal is the largest music recording

11 corporation in the world. It maintains offices in over 60 countries, operates over 20

12 record labels, and, among other activities, promotes and markets sound recordings

13 and merchandise from various artists. The acts and omissions of Universal alleged

14 herein, of interfering with Plaintiffs' rights, were committed by high-level officers

15 and employees of Universal acting on behalf of Universal in this District.

16       8.     Upon information and belief, SoundExchange is a Delaware

17 Corporation with its principal place of business at 733 10th Street NW, 10th Floor,

18 Washington, D.C. 20001. The Court has jurisdiction over SoundExchange because

19 it has done business in the Central District, and has purposefully availed itself of the

20 benefits and protections of the State of California, in this District.

21                                   **JURISDICTION AND VENUE**

22       9.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and

23 1338(a) , and alternatively, based upon complete diversity between Plaintiffs and

24 Defendants pursuant to 28 U.S.C. § 1332, as well as supplemental jurisdiction under

25 28 U.S.C. § 1367. The amount in controversy exceeds Seventy Five Thousand

26 Dollars ($75,000), exclusive of interest and costs, and is between citizens of

27 different states. This Court also has federal question jurisdiction in the matter in that

28 the Plaintiffs seek a declaration of rights and other remedies under the Copyright

KING, HOLMES,
PATERNO &
SORIANO, LLP

4612.060/1007939.3                    3

1  Act, 17 U.S.C. § 101 *et seq.*

2       10.    Venue is proper in this District under 28 U.S.C. § 1391(b)&(c) and

3  1400(a) because a substantial part of the events and acts giving rise to the claim

4  occurred in this District, Universal's principal place of business is in this District,

5  both Universal and SoundExchange are corporations deemed to reside in this

6  District by reason of being subject to its personal jurisdiction, and the action arises

7  under an Act of Congress relating to copyrights.

8                            **FACTUAL BACKGROUND**

9        **1998 Recording Agreement Between Carter and Cash Money**

10      11.    In a written agreement dated November 1, 1998, (the "1998 Recording

11  Agreement"), Carter agreed to provide exclusive recording services to Cash Money.

12  Cash Money is in the business of producing and manufacturing sound recordings

13  containing performances of musical compositions and distributing, licensing, selling

14  and otherwise exploiting those sound recordings throughout the world in all

15  manners and media. The 1998 Recording Agreement contained, *inter alia*, various

16  royalty provisions and option periods to extend the term thereof.

17      12.    The 1998 Recording Agreement has been amended, including in a

18  document dated June 5, 2008 ("2008 Amendment") by which Carter was granted

19  joint ownership along with Cash Money (*i.e.,* 50 % each ) in the master recordings

20  of records delivered by Carter to Cash Money during the "fourth and fifth option

21  periods" under the 1998 Recording Agreement, as amended ("Option Period

22  Records").

23        **2003 Young Money Label Joint Venture Agreement**

24      13.    On or about February 20, 2003, Carter and Cash Money entered into a

25  written "Memorandum of Agreement" (the "2003 Label Agreement") for the

26  creation of the Young Money Label joint venture. The joint venture was established

27  for the mutual purpose of the manufacture, distribution, promotion and exploitation

28  of recordings containing the performances of new recording artists who Carter had

KING, HOLMES,
PATERNO &
SORIANO, LLP

1 │ discovered and would be signed to the Young Money Label following approval by

2 │ Carter and Cash Money, the sole owners of the joint venture.

3 │      14.    The 2003 Label Agreement provided, *inter alia*,

4 │      a.    The profits of the Young Money Label would be divided 51% -

5 │ 49% between Cash Money and Carter, and ownership of all the Young Money Label

6 │ property, (*e.g.*, master recordings, copyrights, intellectual property, good will)

7 │ similarly would be owned 51% - 49% between Cash Money and Carter,

8 │ respectively;

9 │      b.    Carter and Cash Money jointly shall be responsible for the

10 │ recording process for the records to be created by it and exploited – including being

11 │ involved in the specification of all creative and budgetary elements – and that all

12 │ creative decisions shall be mutually approved by both Carter and Cash Money;

13 │      c.    The Young Money Label would be "charged with the same net

14 │ distribution fee charged to Cash Money for Universal Record's distribution services

15 │ for Cash Money's own non-joint venture records," set out in that agreement as a

16 │ specified percentage of revenue; and

17 │      d.    The initial agreement was for a three year term.

18 │      15.    Cash Money also agreed in the 2008 Amendment that net profits due to

19 │ Carter pursuant to the 2003 Label Agreement could not be cross-collateralized

20 │ against any monies that were unrecouped by Cash Money under the 1998 Recording

21 │ Agreement.

22 │      16.    The 2003 Label Agreement was amended at various other times, with

23 │ the final February 5, 2012 amendment ("2012 Amendment") extending the term and

24 │ expressly providing for that term to end on June 4, 2015. The term has thus ended,

25 │ and Cash Money has no right to perpetuate the joint venture.

26 │      17.    The 2012 Amendment also acknowledges that the copyrights in respect

27 │ of all master recordings delivered under the 2003 Label Agreement shall be

28 │ registered as jointly owned by Cash Money and Young Money.

KING, HOLMES,
PATERNO &
SORIANO, LLP

4612.060/1007939.3                           5

1    **The 2009 Drake Letter Agreement**

2       18.    The recording artist Aubrey Drake Graham p/k/a "Drake" (hereinafter

3    "Drake") became an artist on the Young Money Label in or around 2009.  Drake

4    entered into an exclusive recording agreement with Aspire Music Group ("Aspire").

5    In turn, Aspire and Drake entered into a Memorandum of Agreement as of June 26,

6    2009 with Cash Money/Young Money LLC in which the parties agreed that Aspire

7    would deliver the services of Drake as an exclusive recording artist to the Young

8    Money Label, and that Aspire would retain one third (33-1/3 %) of the ownership of

9    the master recordings delivered to the Young Money Label.

10       19.    In addition, Cash Money and Young Money LLC executed between

11   them a Letter Agreement also dated as of June 26, 2009 (the "Drake Letter

12   Agreement"), wherein Young Money LLC and Cash Money agreed that Young

13   Money LLC is entitled to one third (1/3) of the ownership of solo recordings of

14   Drake released, and that same percentage of the net profits earned in connection

15   with those records, which would not be cross-collateralized against any advances or

16   other payments otherwise paid or payable to Young Money LLC pursuant to the

17   2003 Label Agreement, as amended.

18       20.    All records delivered by Drake, Nicki Minaj and Tyga to Universal for

19   distribution are referred to herein as the "YME Records."

20   **Carter Interests Assigned To Young Money LLC**

21       21.    Subsequent to the creation of the Young Money Label, Carter's

22   interests in the Young Money Label, and under the 1998 Recording Agreement as

23   amended, including those held under his earlier "for services of" entity (also named

24   Young Money Entertainment, LLC), were assigned to Plaintiff Young Money LLC.

25   To the extent any of Carter's interests alleged above have not been conveyed or

26   transferred to Young Money, LLC, then Carter is entitled to those interests.

27   / / /

28   / / /

KING, HOLMES,
PATERNO &
SORIANO, LLP

**SoundExchange's Role**

22.     SoundExchange is an independent nonprofit performance rights organization that collects and distributes digital performance royalties on the behalf of sound recording copyright owners and featured artists for non-interactive digital transmissions, including satellite, Internet radio, and cable television music channels.  Such royalties are mandated under the Digital Millennium Copyright Act of 1998 ("DCMA").  Under the DCMA, fifty percent (50%) of such performance royalties are payable to or for the benefit of artists appearing on recordings ("artists' royalties"), and fifty percent (50%) are payable to the owner of the sound recordings, which typically is the record label, hence the common term of "label performance royalties" for the latter payments.

23.     SoundExchange is designated by Congress as the sole organization authorized to collect royalties paid by services making available ephemeral phonorecords or digital audio transmissions of sound recordings, or both, under the statutory licenses set forth in 17 U.S.C. §§ 112 and 114.  As of January 1, 2003, SoundExchange was designated by the United States Copyright Office to also distribute the collected royalties to copyright owners and performers entitled under and pursuant to 17 U.S.C. § 114(g)(2).  SoundExchange operates, in part, pursuant to Copyright Office regulations set forth in 37 C.F.R. Parts 260, 261, 262, 263, 270 and 384.

24.     By reason of Young Money LLC's ownership in the records described above, Young Money LLC is entitled to payment of its one third share of label performance royalties on Drake records, 49% on other Young Money Label records and 50% on Option Period Records.

25.     Plaintiffs have registered their rights with SoundExchange and entered into contracts with SoundExchange for collection and payment to Plaintiffs of their shares of label performance royalties. Universal is aware of the existence of those registered rights and contracts.

KING, HOLMES,
PATERNO &
SORIANO, LLP

**Universal's Distributor Role**

26.     Upon information and belief, pursuant to an agreement between Universal and Cash Money, Universal provides distribution services of Cash Money records for Cash Money (the "Universal Distribution Agreement"), including records delivered by Carter to Cash Money under the 1998 Recording Agreement, as amended.  Cash Money also provided the Young Money Label-produced records, including those of Drake, to Universal for distribution.

**Universal Has Wrongfully Blocked Payments of Royalties and Profits to Plaintiffs**

27.     Universal's wrongful actions described here have blocked payment by SoundExchange to Carter and Young Money LLC of label performance royalties due Carter and Young Money, LLC.  In communications to SoundExchange, Universal has claimed a right to 100% of the label performance royalties attributed to the YME Records, despite the ownership split of 51% - 49% between Cash Money and Carter/Young Money LLC pursuant to the 2003 Label Agreement, and Plaintiffs' one third ownership share of Drake records owned by Young Money LLC.  Universal has also claimed a right to 100% of Plaintiffs' share of label performance royalties for Option Period Records.

28.     Universal makes claim to the share of label performance royalties due to Young Money LLC and/or Carter, based upon an alleged right of recoupment by Universal against certain advances previously made by Universal to Cash Money, pursuant to Universal's distribution arrangement with Cash Money.  Universal has advanced more than One Hundred Million Dollars ($100,000,000) to Cash Money of which more than Sixty Million Dollars ($60,000,000) is still outstanding.  Neither Carter nor Young Money LLC was or is a party to Universal's distribution agreement with Cash Money, nor are they recipients of any of the One Hundred Million Dollars ($100,000,000) advanced by Universal to Cash Money.  Indeed, Universal refuses to provide Plaintiffs with documentation of such agreement.

KING, HOLMES,
PATERNO &
SORIANO, LLP

4612.060/1007939.3                                                              8

1  Universal's contention that it is entitled to obtain 100% of profits earned on records

2  owned by Carter, if it were to be accepted, would render illusory the rights of

3  Plaintiffs under the foregoing contracts; Universal would be at liberty to keep

4  funding Cash Money operations, yet deprive Plaintiffs of any revenues, including

5  label performance royalties, on the massively successful sales of YME Records, and

6  the Option Period Records, claiming entitlement to apply all those proceeds to repay

7  Cash Money's massive debt.

8        29.    Universal's wrongful actions described herein have also prevented

9  payment of profits earned on the sale of records owned by Young Money LLC and

10  the Option Period Records due to Universal's retention of those profits based on the

11  same alleged right of recoupment by Universal against advances previously made to

12  Cash Money, pursuant to Universal's distribution arrangement with Cash Money.

13        30.    Universal is, and has been at all times mentioned, aware of the terms of

14  the contracts between Plaintiffs and Cash Money.

15        31.    Universal is, and since the inception of the 2003 Label Agreement has

16  been, aware that Young Money LLC is a copyright owner, along with Cash Money,

17  of the YME Records.  Universal has been aware since 2008 that Carter was given a

18  joint ownership and corresponding copyright interest in the Option Period Records.

19        32.    Universal was aware of the joint copyright ownership of Carter/Young

20  Money LLC in YME Records and the absence of any right to cross-collateralize

21  record revenues and royalties due Plaintiffs against advances made by Universal to

22  Cash Money.

23        33.    Plaintiffs never agreed to permit Universal to offset, recoup or

24  otherwise collateralize either Carter and/or Young Money LLC's share of label

25  performance royalties collected by SoundExchange and payable to Young Money

26  LLC and/or Carter by SoundExchange, or profits attributable to Plaintiffs'

27  ownership interest in the Option Periods Records or the YME Records.

28  ///

KING, HOLMES,
PATERNO &
SORIANO, LLP

34.     Universal has no right, nor claim to any of Plaintiffs' share of label performance royalties now being held or hereafter earned.

35.     By letter dated December 4, 2014, Plaintiffs' counsel demanded that Universal withdraw its claim communicated to SoundExchange to Plaintiffs' share of label performance royalties.  Universal refused to withdraw the claim.

36.     Plaintiffs' share of label performance royalties is now being held by SoundExchange based upon Universal's unsupported claims and without the benefit of any judgment, attachment or lien in favor of Universal.  SoundExchange refuses to pay any of the money due to Plaintiffs as a result of the adverse claims made by Universal, until the dispute over those funds is resolved.

**Cash Money Has Acknowledged It Has No Claim to Withhold Label Performance Royalties**

37.     Cash Money has acknowledged to Universal and SoundExchange that it has no right to or interest in the label performance royalties allocable to Plaintiffs.

**Universal's False Registration of Copyrights of Young Money Label and Option Period Records**

38.     Universal submitted applications to the U.S. Copyright Office for registration of YME Records and Option Period Records delivered by Cash Money for distribution.  Despite Universal's awareness of Plaintiffs' ownership interests in those records, the applications submitted by Universal to the U.S. Copyright Office falsely reflect that Cash Money alone is the sole copyright owner of those records. Upon information and belief, Universal falsely registered the copyrights without acknowledgment of Plaintiffs' interests, in order to facilitate Universal's efforts to collect Plaintiffs' share of label performance royalties and to divert Plaintiffs' share of record profits to repayment of Cash Money's debts.

**The New Drake Record Universal Plans to Release**

39.     Upon information and belief, Cash Money recently delivered to Universal a new record performed by Drake, created and owned by the Young

KING, HOLMES,
PATERNO &
SORIANO, LLP

1   Money Label, with Plaintiffs entitled to one third ownership.

2        40.    Universal has been aware at all times material hereto that :

3           a.    The Young Money Label terminated effective June 4, 2015;

4           b.    By reason of the 2003 Label Agreement, as well as the end of the

5   joint venture effective June 4, 2015, Cash Money does not have, and never had,

6   unilateral authority to make disposition of Young Money Label assets, to deliver the

7   new Drake record to Universal, to permit Universal to release and distribute that

8   record, nor to collateralize any of the revenues due Plaintiffs in favor of Universal;

9           c.    In light of Plaintiffs' one third interest in the copyright of the

10   new Drake record, the copyright should be registered by with the U.S. Copyright

11   office reflecting Plaintiffs' ownership interest; and

12           d.    Cash Money owed a fiduciary duty to Plaintiffs with respect to

13   the relationships herein alleged.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment, Against Universal And SoundExchange)

16        41.    Plaintiffs repeat, reallege, adopt and incorporate each and every

17   allegation contained in Paragraphs 1 through 40, inclusive, as though fully set forth

18   herein.

19        42.    SoundExchange refuses to pay any of the money due to Young Money

20   LLC and Carter individually based on Universal's conflicting demand.

21        43.    By reason of the foregoing, an actual, genuine and justiciable

22   controversy exists between the parties that can only be resolved by declaratory

23   relief.  In accordance with the provisions of 28 U.S.C. §§ 2201 and 2202, and the

24   terms and provisions of the U.S. Copyright Law, as a result of SoundExchange's

25   refusal to pay any of the monies due to Plaintiffs from their portion of label share of

26   performance royalty income based upon the claims made by Universal, it has

27   become necessary to request that the Court make a declaration as to the rights and

28   other legal relations of the parties.

KING, HOLMES,
PATERNO &
SORIANO, LLP

4612.060/1007939.3                   11

44.   Plaintiffs seek a judgment declaring the parties' respective rights with regard to Plaintiffs' share of label performance royalties, including a declaration that Universal is not entitled to recoup against Plaintiffs' share of label performance royalties, or from any monies due Plaintiffs from Cash Money,  any amounts that Universal claims to have advanced to Cash Money.

## SECOND CLAIM FOR RELIEF

### (Inducement to Breach Contract, Against Universal)

45.   Plaintiffs repeat, reallege, adopt and incorporate each and every allegation contained in Paragraphs 1 through 40, inclusive, as though fully set forth herein.

46.   Plaintiffs have registered and entered into contracts with SoundExchange to collect their shares of label performance royalties, and have not designated any other party other than Carter and/or Young Money LLC to receive those royalties.

47.   Universal has intentionally caused SoundExchange to breach its contractual and statutory obligation to pay Carter and/or Young Money LLC their share of the label performance royalties on Young Money Label records and the Option Period Records, based upon the claims asserted by Universal.

48.   Universal has intentionally caused Cash Money to breach its contracts with Plaintiffs.  Universal accepts records from Cash Money on which Plaintiffs are to be paid profits by Cash Money, yet Universal knows that while Universal will earn millions of dollars of profits on those records, Universal will retain all the profits, claiming recoupment rights against those profits for advances to Cash Money.  Universal knows that Cash Money will not pay Plaintiffs those contracted for payments.

49.   As a result of the foregoing inducement by Universal of breach by SoundExchange of its contracts and statutory rights with Carter and Young Money LLC, Plaintiffs have suffered damages in the amount of at least Five Million Dollars

King, Holmes,
Paterno &
Soriano, LLP

1   ($5,000,000), to date, and will continue to incur still further damages.

2        50.    As the result of the foregoing inducement by Universal of breach of the

3   Cash Money contracts, Plaintiffs have suffered damages to date estimated to exceed

4   Twenty Million Dollars ($20,000,000).

5        51.    By reason of Universal's conduct, Universal has been unjustly

6   enriched.  Plaintiffs are entitled to disgorgement by Universal of their profits

7   resulting from their wrongful inducement of breach of the contracts and statutory

8   rights of Plaintiffs with SoundExchange.

9        52.    In engaging in the conduct described above, Universal acted with

10  oppression, fraud, or malice, and accordingly, Plaintiffs are entitled to recover

11  punitive damages sufficient to punish and make an example of Universal,  in an

12  amount according to proof.

13  **THIRD CLAIM FOR RELIEF**

14  **(For Aiding and Abetting Breach of Fiduciary Duty, Against Universal)**

15       53.    Plaintiffs repeat, reallege, adopt and incorporate each and every

16  allegation contained in Paragraphs 1 through 40.

17       54.    By reason of the Young Money Label joint venture relationship, Cash

18  Money owes a fiduciary duty to Carter, and to Young Money LLC, in respect to the

19  joint venture.  That fiduciary duty includes the obligation of Cash Money to deal

20  with Carter and Young Money LLC in good faith and with loyalty, to make full

21  disclosure of joint venture business, to allow Young Money LLC to participate

22  meaningfully in the decisions of operation of the joint venture, to not act against the

23  best interest of the joint venture or the rights and interests of Carter in the Young

24  Money Label, to pay or incur only proper expenses of the joint venture, to not

25  comingle assets or liabilities of the joint venture with those of Cash Money, and to

26  account for and remit to Carter and Young Money LLC their share of profits.

27  / / /

28  / / /

KING, HOLMES,
PATERNO &
SORIANO, LLP

4612.060/1007939.3                                    13

55.     Universal has aided and abetted Cash Money in breach of its fiduciary duty to Carter and Young Money LLC, including by Universal:

a.      Registering the copyrights of Young Money Label artist records solely in the name of Cash Money;

b.      Funding advances to Cash Money, which Universal knew Cash Money would not share with Plaintiffs under the 2003 Label Agreement or the Drake Letter Agreement or apply to Young Money Label operations, and which advances Universal would then claim it is entitled to recoup against Plaintiffs' share of label performance royalties payable from SoundExchange and Plaintiffs' share of profits from the YME Records and the Option Period Records;

c.      Paying directly to Cash Money's favored vendors and service providers, at the urging of Cash Money: (i) the operating and other expenses of Cash Money and its principals, and (ii) the ostensible expenses for Young Money Label artist records, without consultation with or obtaining the consent of Plaintiffs, knowing that Universal would claim that any such payments were recoupable against all compensation due Plaintiffs on YME Records.  The effect of this practice by Universal has been to allow and encourage Cash Money to spend extravagant amounts of money, not to the mutual benefit of all Young Money Label owners, in expectation that Cash Money would deliver lucrative and profitable artist records on the Young Money Label, with Universal intending they would assert they were entitled to recoup such advances against Plaintiffs' revenue shares;

d.      Failing to render to Plaintiffs, despite their request, accountings of funds advanced to Cash Money and other expenses paid by Universal at Cash Money's instance, allegedly recoupable by Universal against YME Records income; and

e.      Failing to involve Plaintiffs in any of the creative and budgetary decision-making regarding Young Money Label affairs as required under the 2003 Label Agreement.

KING, HOLMES,
PATERNO &
SORIANO, LLP

4612.060/1007939.3                                    14

56.     By reason of Universal's conduct, Plaintiffs have been damaged in an amount not yet known, but which is estimated to exceed the sum of Twenty Million Dollars ($20,000,000).

57.     By reason of Universal's wrongful conduct, Universal has been unjustly enriched, and Universal should be forced to disgorge all profits obtained by its conduct.

58.     In engaging in the conduct described above, Universal acted with oppression, fraud, or malice, and accordingly, Plaintiff is entitled to recover punitive damages sufficient to punish and make an example of Universal, in an amount according to proof.

## FOURTH CLAIM FOR RELIEF

**(Tortious Interference with Prospective Advantage, Against Universal)**

59.     Plaintiffs repeat, reallege, adopt and incorporate each and every allegation contained in Paragraphs 1 through 40, Paragraphs 46 through 52, and Paragraphs 54 through 58, inclusive, as though fully set forth herein.

60.     Plaintiffs enjoyed the economic relationships between them and SoundExchange based upon the registrations and contacts with SoundExchange, and by reason of the statutory rights under the Copyright Act to label performance royalties  pertaining to Young Money Label records and the Option Period Records. Plaintiffs enjoyed the economic relationships between them and Cash Money regarding the 1998 Recording Agreement, as Amended, and the 2003 Label Agreement.

61.     Universal has had knowledge of these relationships.

62.     Universal has engaged in the wrongful conduct alleged designed above to disrupt these relationships Plaintiff enjoyed.

63.     Universal's conduct in interfering with these relations constituted wrongful inducement of breach of contracts with SoundExchange and Cash Money involving Plaintiffs, and aiding and abetting Cash Money in breaches of its fiduciary

KING, HOLMES,
PATERNO &
SORIANO, LLP

1    duties to Plaintiffs.

2      64. The conduct by Universal has caused actual disruption of the

3    relationship with SoundExchange and Plaintiff's rights to label performance

4    royalties, payments due Plaintiffs under the contracts with Cash Money.

5      65. As a direct and proximate result of Universal's tortious conduct,

6    Plaintiffs have suffered monetary damages in an amount not presently known, but

7    estimated to exceed Twenty Million Dollars ($20,000,000).

8      66. By reason of Universal's wrongful conduct, Universal has been

9    unjustly enriched, and Universal should be forced to disgorge all profits or benefits

10   obtained by its conduct.

11     67. In engaging in the conduct described above, Universal acted with

12   oppression, fraud, or malice, and accordingly, Plaintiff is entitled to recover punitive

13   damages sufficient to punish and make an example of Universal, in an amount

14   according to proof.

15     WHEREFORE, Plaintiffs demand judgment against the Defendants in each

16   cause of action as follows:

17     1. On the First Claim for Relief, in accordance with 28 U.S.C. §§ 2201

18   and 2202, judgment declaring that:

19      a. Plaintiffs are entitled to their share of label performance royalty

20   income now being withheld by Defendant SoundExchange, at the insistence of

21   Universal;

22      b. Universal has no right to the label performance royalties due

23   Plaintiffs, which Universal has made claim to from SoundExchange;

24      c. Plaintiff is entitled to its rightful joint copyright ownership

25   interest to be registered with the U.S. Copyright Office;

26      d. Universal has no right to recoup advances it made to Cash

27   Money from royalties and payments due Plaintiffs under their contracts with Cash

28   Money or from label performance royalties collected by SoundExchange; and

KING, HOLMES,
PATERNO &
SORIANO, LLP

4612.060/1007939.3      16

1           e.     SoundExchange is obligated to render accountings to Plaintiffs

2    of moneys collected on Plaintiffs' copyright interests.

3           2.     On the Second Claim for Relief, a monetary judgment against

4    Universal in an amount to be determined according to proof, but in no event less

5    than Twenty Million Dollars ($20,000,000) and/or disgorgement of Universal's

6    profits, together with punitive damages according to proof.

7           3.     On the Third Claim for Relief, for a judgment ordering awarding

8    disgorgement of the profits reaped by Universal as the result of aiding and abetting

9    Cash Money in breaching its fiduciary duties to Plaintiffs, and/or money damages in

10   an amount to be according to proof, but in no event less than Twenty Million

11   Dollars ($20,000,000), together with punitive damages according to proof.

12          4.     On the Fourth Claim for Relief, for damages, disgorgement of

13   Universal's profits and benefits, and for punitive damages according to proof.

14          5.     The costs and disbursements of this action, including reasonable

15   attorneys' fees, together with such other and further relief as to this Court seems just

16   and proper.

17   DATED:  March 28, 2016           KING, HOLMES, PATERNO &
18                              SORIANO, LLP
19
20
21                              By: _____
22                                    HOWARD E. KING
                                Attorneys for Plaintiffs YOUNG MONEY
23                              ENTERTAINMENT, LLC and DWAYNE
                                MICHAEL CARTER, JR.
24
25   / / /
26   / / /
27   / / /
28   / / /

KING, HOLMES,
PATERNO &
SORIANO, LLP

1

## DEMAND FOR JURY TRIAL

2     Plaintiff demands a trial of the within action, including the complaint, and any

3 further pleadings.

4

5 DATED:  March 28, 2016

KING, HOLMES, PATERNO &
SORIANO, LLP

6

7

8 By: _____

HOWARD E. KING

9 Attorneys for Plaintiffs YOUNG MONEY
ENTERTAINMENT, LLC and DWAYNE

10 MICHAEL CARTER, JR.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KING, HOLMES,
PATERNO &
SORIANO, LLP

4612.060/1007939.3                                                    18