E-Filed

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JS - 6

### CIVIL MINUTES - GENERAL

| Case No. | CV 16-2096-GHK (JCx) | | Date | July 29, 2016 |
|---|---|---|---|---|
| Title | *Young Money Entertainment, LLC, et al. v. Universal Music Group, Inc., et al.* | | | |

| Presiding: The Honorable | **GEORGE H. KING, U.S. DISTRICT JUDGE** | |
|---|---|---|
| Paul Songco | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| (none) | (none) |

**Proceedings:**   **(In Chambers) Order re:** (1) Defendant Universal Music Group, Inc.'s Motion to Stay or Dismiss Complaint [Dkt. 11]; (2) Defendant SoundExchange, Inc.'s Motion to Join Defendant Universal Music Group, Inc.'s Motion [Dkt. 16]

This matter is before us on the above-captioned Motions. We have considered the papers filed in support of and in opposition to these Motions and deem this matter appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows:

## I.    Background

### A.    The Present Action

Plaintiff Dwayne Michael Carter, Jr. is a rap artist who performs under the name "Lil Wayne." (*See* Compl. ¶ 3.) Plaintiff Young Money Entertainment, LLC ("Young Money") is a Delaware limited liability company.[1] (*Id.* ¶ 4.) Carter, a Florida resident, is the sole member of Young Money. (*Id.* ¶ 6.) Defendant Universal Music Group, Inc. ("Universal") is a music recording corporation, (*id.* ¶ 7), and Defendant SoundExchange, Inc. ("SoundExchange") is an independent performance rights organization that collects and distributes—pursuant to statutory license—digital performance royalties on behalf of sound recording copyright owners and featured artists for "non-interactive digital transmissions, including satellite, [i]nternet radio, and cable television music channels,"[2] (*id.* ¶¶ 22-23).

Carter and non-party Cash Money Records, Inc. ("Cash Money") entered into a series of written agreements, which include:

---

[1] Carter and Young Money will collectively be referred to as "Plaintiffs."

[2] Universal and SoundExchange will collectively be referred to as "Defendants."

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2096-GHK (JCx) | | Date | July 29, 2016 |
|---|---|---|---|---|
| Title | *Young Money Entertainment, LLC, et al. v. Universal Music Group, Inc., et al.* | | | |

- The "1998 Recording Agreement," under which Carter agreed to provide exclusive recording services to Cash Money.  (*Id.* ¶ 11.)

- The "2008 Amendment," which amended the 1998 Recording Agreement to grant Carter and Cash Money each 50% ownership in the master recordings of records delivered by Carter to Cash Money during certain "Option Periods" provided for in the 1998 Recording Agreement (the "Option Period Records").  (*Id.* ¶ 12.)

- The "2003 Label Agreement," which created the Young Money Label Joint Venture ("YML").  (*Id.* ¶ 13.)  YML was "established for the mutual purpose of the manufacture, distribution, promotion and exploitation of recordings containing the performances of new recording artists who Carter had discovered and would be signed to the Young Money Label following approval by Carter and Cash Money."  (*Id.*)  Under the 2003 Label Agreement, 51% of the profits of the YML would go to Cash Money and 49% of the profits would go to Carter.[3]  (*Id.* ¶ 14.a.)  Similarly 51% ownership of YML property would be given to Cash Money and the remaining 49% would be given to Carter.  (*Id.*)  Cash Money also agreed that net profits due to Carter pursuant to the 2003 Label Agreement would not be cross-collateralized against any monies unrecouped by Cash Money under the 1998 Recording Agreement.  (*Id.* ¶ 15.)  The 2003 Label Agreement was to last for three years, but the term was amended at various times with a final amendment (the "2012 Amendment") extending the term to end on June 4, 2015.  (*Id.* ¶¶ 14.d, 16.)  This final amendment also "acknowledges that the copyrights in respect to all master recordings delivered under the 2003 Label Agreement shall be registered as jointly owned by Cash Money and Young Money."  (*Id.* ¶ 17.)

- The "2009 Drake Letter Agreement," pursuant to which Young Money and Cash Money agreed that Young Money is entitled to one-third ownership of solo recordings released by non-party rap artist Aubrey "Drake" Graham, as well as one-third of net profits earned in connection with those records.  (*Id.* ¶¶ 18-19.)[4]

---

[3] "Subsequent to the creation of the Young Money Label, Carter's interests in the Young Money Label, and under the 1998 Recording Agreement as amended . . . were assigned to [Young Money]." (*Id.* ¶ 21.)

[4] Universal requests we take judicial notice of (1) the 1998 Recording Agreement; (2) the 2008 Amendment; and (3) the 2012 Amendment.  Under the "incorporation by reference" doctrine, we may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotation marks omitted).  All of these documents are referenced in the Complaint, and Plaintiffs do not dispute the authenticity of the copies provided.  Thus,

E-Filed

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 16-2096-GHK (JCx) | | Date | July 29, 2016 |
|---|---|---|---|---|
| Title | *Young Money Entertainment, LLC, et al. v. Universal Music Group, Inc., et al.* | | | |

Plaintiffs have "registered their rights with SoundExchange and entered into contracts with SoundExchange for collection and payment to Plaintiffs of their shares of label performance royalties." (*Id.* ¶ 25.)

Universal "provides distribution services" to Cash Money, including "records delivered by Carter to Cash Money under the 1998 Recording Agreement as amended." (*Id.* ¶ 26.) Cash Money "also provided the Young Money Label-produced records, including those of Drake, to Universal for distribution." (*Id.*) According to Plaintiffs, Universal "blocked payment by SoundExchange to Carter and Young Money [] of label performance royalties due to Carter and Young Money." (*Id.* ¶ 27.) "Universal has claimed a right to 100% of the label performance royalties attributed to the [records produced under YML], despite the ownership split of 51%-49% between Cash Money and Carter/Young Money [] pursuant to the 2003 Label Agreement, and Plaintiffs' one[-]third ownership share of Drake records owned by Young Money []." (*Id.*) "Universal has also claimed a right to 100% of Plaintiff[s'] share of label performance royalties for Option Period Records." (*Id.*)

Plaintiffs assert that Universal claims this share of these royalties "based upon an alleged right of recoupment" by Universal against a $100,000,000 advance they provided to Cash Money under a distribution agreement, of which $60,000,000 is still outstanding. (*Id.* ¶ 28.) Neither Plaintiff is a party to this distribution agreement. (*Id.*) Plaintiffs contend that "Universal is, and has been at all times mentioned, aware of the terms of the contracts between Plaintiffs and Cash Money." (*Id.* ¶ 30.) Plaintiffs assert that "Universal has no right, nor claim to any of Plaintiffs' share of label performance royalties now being held or hereinafter earned." (*Id.* ¶ 34.) "SoundExchange refuses to pay any of the money due to Plaintiffs as a result of the adverse claims made by Universal, until the dispute over those funds is resolved." (*Id.* ¶ 36.) Plaintiffs also allege that Universal has submitted copyright applications to the U.S. Copyright Office for the Option Period Records and records produced under YML that "falsely reflect that Cash Money alone is the sole copyright owner of those records." (*Id.* ¶ 38.)

Based on these allegations, Plaintiffs brought the following claims on March 28, 2016:

- Declaratory judgment against Defendants, declaring "the parties' respective rights with regard to Plaintiffs' share of label performance royalties, including a declaration that Universal is not entitled to recoup against Plaintiffs' share of label performance royalties, or from any monies due Plaintiffs from Cash Money, any amounts that Universal claims to have advanced to Cash Money." (*Id.* ¶ 44.)

- Inducement to breach contract against Universal for allegedly causing SoundExchange to breach its contractual and statutory obligation to pay Plaintiffs for their share of the label performance royalties on Option Period Records and records produced under YML. (*Id.* ¶ 47.)

we **GRANT** Universal's request.

E-Filed

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 16-2096-GHK (JCx) | | Date | July 29, 2016 |
|---|---|---|---|---|
| Title | *Young Money Entertainment, LLC, et al. v. Universal Music Group, Inc., et al.* | | | |

- Aiding and abetting breach of fiduciary duty against Universal for inducing Cash Money to breach its fiduciary duty owed to Plaintiffs under the YML joint venture. (*Id.* ¶¶ 54-55.)

- Tortious interference with prospective advantage against Universal for allegedly disrupting Plaintiffs' economic relationships with Cash Money and SoundExchange. (*Id.* ¶¶ 60-67.)

#### B.    The Louisiana Action

On May 29, 2015—roughly ten months prior to the present action—Plaintiffs filed an action against Cash Money in Louisiana state court, asserting claims for (1) breach of the 1998 Recording Agreement; (2) breach of the 2003 Label Agreement; (3) breach of fiduciary duty; (4) unjust enrichment; (5) accounting; (6) anticipatory breach of the 1998 Recording Agreement and the 2003 Label Agreement; (7) declaratory judgment; (8) conversion; and (9) appointment of a temporary receiver or liquidator. (*See* Request for Judicial Notice ("RJN"),[5] Exhibit 3 (the Complaint in the Louisiana action).)

#### C.    The Present Motions

On May 27, 2016, Universal filed the present Motion, arguing that this case should be stayed pursuant to the *Colorado River* doctrine in light of the Louisiana action. [Dkt. 11.] Alternatively, Universal argues that dismissal of the action is proper pursuant to either (1) Federal Rule of Civil Procedure 12(b)(7) because Cash Money is a necessary and indispensable party that cannot be joined in this action; or (2) the doctrine of forum non conveniens. [*Id.*] On May 31, 2016, SoundExchange moved to join this Motion. [Dkt. 16.]

## II.    Universal's Motion to Stay

Universal moves to stay the entirety of this action pursuant to the *Colorado River* doctrine.

#### A.    Legal Standard

Federal courts are authorized to dismiss or stay an action "due to the presence of a concurrent state proceeding for reasons of wise judicial administration." *Moses H. Cone Mem'l Hosp. v. Mercury*

---

[5] Universal requests that we take judicial notice of seven court filings in the Louisiana action, as well as two court filing from the Southern District of New York. (*See* RJN, Exs. 1-9.) Plaintiffs do not oppose this request. A court "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Accordingly, we **GRANT** this request.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2096-GHK (JCx) | | Date | July 29, 2016 |
|---|---|---|---|---|
| Title | *Young Money Entertainment, LLC, et al. v. Universal Music Group, Inc., et al.* | | | |

*Constr. Corp.*, 460 U.S. 1, 15 (1983) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976)).  "[T]he *Colorado River* doctrine is a narrow exception to 'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'"  *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002).  Circumstances warranting a stay under the doctrine are "exceedingly rare."  *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1033 (9th Cir. 2005).

"As a threshold matter to the *Colorado River* test, the Court must determine whether the federal and state actions are sufficiently 'parallel'—i.e. whether 'substantially the same parties are contemporaneously litigating the same issues in different forums.'"  *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1170 (C.D. Cal. 2008).  If this requirement is met, we look to several additional factors to determine whether a *Colorado River* stay is warranted: "(1) whether the state court first assumed jurisdiction over property; (2) inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings are inadequate to protect the federal litigant's rights; [and] (7) whether exercising jurisdiction would promote forum shopping."  *Holder*, 305 F.3d at 870.  The balance of these factors is "heavily weighted in favor of the exercise of jurisdiction."  *Moses H. Cone*, 460 U.S. at 16.

### B.      Parallelism

"[E]xact parallelism" is not required; "[i]t is enough if the two proceedings are 'substantially similar.'"  *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989).  "[T]he existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993).  But, courts should be "particularly reluctant to find that the actions are not parallel when the federal action is but a 'spin-off' of more comprehensive state litigation."  *Nakash*, 882 F.2d at 1417.

Universal asserts that the present action and the Louisiana action are substantially similar for purposes of the *Colorado River* doctrine.  Universal notes that (1) "Plaintiffs have requested a declaration of their claimed entitlement to performance royalty income, as alleged joint owners of the same recordings and copyrights at issue in the Louisiana [a]ction, pursuant to the same contracts as are at issue in the Louisiana [a]ction," (Mot. at 10 (emphasis omitted)); and (2) "Plaintiffs have sued [Universal] for inducing [Cash Money's] alleged fiduciary breaches," with "those same breaches [being] at issue in the Louisiana [a]ction," (*id.* (emphasis omitted)).  "Simply put, Plaintiffs' claimed entitlement to [SoundExchange] royalties in this action is entirely dependent upon, among other things, Plaintiffs' alleged status as joint copyright owners under the Louisiana Agreements and the registration of that ownership interest."  (Reply at 6.)  "Those exact issues are the subject of Plaintiffs' declaratory relief claim in the Louisiana [a]ction."  (*Id.* (emphasis omitted).)  "In order to hold [Universal] secondarily liable for inducing or aiding and abetting [Cash Money's] alleged breaches of contract and fiduciary duties, this Court necessarily must adjudicate the same core issues: the interpretation of the Louisiana

E-Filed

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2096-GHK (JCx) | | Date | July 29, 2016 |
|---|---|---|---|---|
| Title | *Young Money Entertainment, LLC, et al. v. Universal Music Group, Inc., et al.* | | | |

Agreements; Plaintiffs' and [Cash Money's] performance under those agreements; and whether [Cash Money] breached the Louisiana Agreements and its fiduciary duties arising under the Louisiana Agreements."  (Reply at 5.)

Plaintiffs, on the other hand, argue that the Louisiana action and the present action are not substantially similar.  Plaintiffs assert that (1) the Louisiana action involves claims against Cash Money for payments owed under the various agreements between these Parties; (2) the Louisiana action does not include allegations pertaining to the SoundExchange royalties or wrongful conduct by Universal; (3) the Louisiana action does not involve Universal's right to receive Plaintiffs' SoundExchange royalties; and (4) Universal's alleged aiding and abetting involves its own wrongful conduct that is not at issue in the Louisiana action.  (Opp'n at 7-10.)  Though Plaintiffs acknowledge that there is some factual overlap between the two actions, they argue that the Louisiana action is not substantially similar to the present action because the Louisiana action will "not resolve the claims here over the SoundExchange royalties."  (*Id.* at 8.)

We agree with Defendants that the present action is substantially similar to the Louisiana action, meaning that the two actions are sufficiently parallel for purposes of this threshold *Colorado River* requirement.  Though the two actions involve different defendants[6] and facially different disputes, they center around common facts and issues.  To resolve Plaintiffs' claims in the present action, we must determine (1) what, if any, royalties Plaintiffs are entitled to under the various agreements between Plaintiffs and Cash Money, (2) whether Cash Money owed Plaintiffs fiduciary duties under the YML and, (3) if so, whether Cash Money breached those duties.  In the Louisiana action, the court will address these same issues in resolving the claims before it.  Additionally, neither court can avoid addressing these issues—each *must* resolve them in order to completely rule on the claims before it.  In essence, the claims in the present action and the Louisiana action "arise from a logically connected nucleus of facts and raise similar sets of substantive issues."  *See El Centro Foods, Inc. v. Nazarian*, 2010 WL 1710286, at *2 (C.D. Cal. Apr. 21, 2010).  The "focal point of both parties' suits hinge" on the issues identified above.  *Id.*  Thus, the requisite parallelism exists.  *See id.*; *see also Nakash*, 882 F.2d at 1416 (concluding that two actions were substantially similar where they both "concern[ed] how the respective parties have conducted themselves since [Plaintiff] purchased a portion of [Defendant's] company]").

*Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908 (9th Cir. 1993) does not compel a different result.  In *Intel*, the court concluded that substantial doubt existed over whether a state court proceeding—an action to confirm an arbitration award—would resolve a concurrent federal action involving the same parties for copyright infringement.  *Id.* at 913.  The court reasoned that "[t]he

---

[6] For actions to be substantially similar for purposes of the *Colorado River* doctrine, the parties in each action need not be identical.  *See Fireman's Fund Ins. Co. v. Quackenbush*, 87 F.3d 290, 297 (9th Cir. 1996).

E-Filed

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 16-2096-GHK (JCx) | | Date | July 29, 2016 |
|---|---|---|---|---|
| Title | *Young Money Entertainment, LLC, et al. v. Universal Music Group, Inc., et al.* | | | |

concurrent state court proceedings will resolve all the issues in this action only if the arbitration award is confirmed and if the state court's resolution of the copyright challenge to the award is deemed to have collateral estoppel effect in federal court." *Id.* On the other hand, " if the state court overturns the arbitration award, then the case will return to federal court for the adjudication of the underlying copyright claims." *Id.* These "contingencies" raised a "substantial doubt sufficient to preclude a *Colorado River* stay." *Id.* But, in *Intel*, the state and federal courts were not required to resolve identical issues in order to rule on the plaintiff's claims. In other words, the arbitration confirmation issue was not before the federal court, and the copyright issues were not before the state court. By contrast, in the present action, both the federal court and the Louisiana court must concurrently determine identical issues, using identical facts, in order to fully resolve Plaintiffs' claims.[7] Thus, unlike in *Intel*, the relevant actions before us are substantially similar. *See Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1020 (7th Cir. 2014) ("The cases rely on the same set of facts, present substantially similar legal issues, and involve substantially the same parties. We agree with the district court's finding that the federal actions are parallel to those at issue in the state court proceeding.").

*Holder*, 305 F.3d 854, also does not undermine our conclusion. In that case, the court concluded that a federal action involving a Hague Convention claim was not substantially similar to a state custody action because "a state court judgment in the custody case [would] not bar [Plaintiff] from raising a Hague Convention claim in federal court," and "the issues relevant to the adjudication of a Hague Convention petition are distinct from those relevant to a custody determination under state law." *Id.* at 868. Such a situation does not exist here. As explained, Plaintiffs' federal and state actions hinge on identical issues that each court must resolve to resolve the actions.

Finally *Wells Fargo Bank, N.A. v. Iny*, 2014 WL 5364120 (D. Nev. Oct. 21, 2014) is inapposite. In that case, the state court had already rejected an argument that certain guarantee agreements were not enforceable. *Id.* at *2. The federal court reasoned that it would "have to address Plaintiff's [federal] fraudulent transfer claims if the Guarantees are found to be enforceable" by the state law court. *Id.* In light of the state court's already having ruled in favor of enforceability on this issue, the federal court concluded "there exists a substantial doubt as to whether the Arizona Litigation will resolve this action." *Id.* Here, the Louisiana court has not issued such a ruling on the pertinent issues before it.[8]

---

[7] Moreover, the claims in the federal action in *Intel* were federal copyright claims, which a federal court may be more inclined to resolve without the need for a *Colorado River* stay. Here, both the present action and the Louisiana action involve state law claims.

[8] To the extent *Weitz Co. LLC v. RCI Systems*, 2014 WL 3720543 (D. Ariz. July 28, 2014) is contrary to our conclusion, we find it unpersuasive.

E-Filed

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2096-GHK (JCx) | Date | July 29, 2016 |
|---|---|---|---|
| Title | *Young Money Entertainment, LLC, et al. v. Universal Music Group, Inc., et al.* | | |

In sum, the present action is substantially similar to the Louisiana action, and therefore the threshold parallelism requirement is met. The parallelism between the actions also weighs in favor of granting a stay.

### C.  Remaining Factors

#### 1.  Jurisdiction Over Property

As there is not real property at issue in this action, this factor is irrelevant to our analysis. *See Nakash*, 882 F.2d at 1415 n.6 (declaring this factor "irrelevant" where "[t]here is no res in the control of either court").

#### 2.  Inconvenience of the Federal Forum

Neither Louisiana nor California is a significantly more convenient forum for the litigants. Universal's Headquarters is in California, (*see* Compl. ¶ 7), and thus litigating in California is convenient. Plaintiffs filed this action in California, and thus litigating in California is presumably also convenient. However, Plaintiffs are citizens of Florida, which would make Louisiana a more convenient forum due to geographic proximity. As a citizen of Delaware and Washington D.C., SoundExchange is closer to Louisiana than California, making Louisiana the more convenient forum. However, the difference in convenience of litigating in these forums is slight, as SoundExchange would be required to travel large distances despite the forum. Thus, the convenience of the forums is roughly equivalent; this factor is neutral.

#### 3.  Piecemeal Litigation

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990) (internal quotation marks omitted). "A correct evaluation of this factor involves considering whether exceptional circumstances exist which justify special concern about piecemeal litigation." *Id.* "The mere possibility of piecemeal litigation does not constitute an exceptional circumstance." *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 979 (9th Cir. 2011).

For the reasons described in the "Parallelism" Section, *supra* Section II.B, there is a significant risk of duplicative efforts in the present action and the Louisiana action. Both courts must address identical issues to resolve Plaintiffs' claims. This risk of duplicative efforts is not merely speculative—to resolve the present action, we will be *required* to determine whether Plaintiffs are entitled to royalties under the agreements with Cash Money and whether Cash Money owed and breached a fiduciary duty to Plaintiffs under the YML. Likewise, the Louisiana court will be *required* to rule on these issues to fully resolve Plaintiffs' claims in that case. Thus, the threat of duplicative efforts is a near certainty, not a mere possibility. Additionally, in both the present action and the Louisiana action, Plaintiffs seek declaratory judgment concerning their rights under the agreements with

E-Filed

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 16-2096-GHK (JCx) | Date | July 29, 2016 |
|---|---|---|---|
| Title | *Young Money Entertainment, LLC, et al. v. Universal Music Group, Inc., et al.* | | |

Cash Money. As there is overlap in the declaratory judgment claims in these actions, there is a significant risk that the Parties would be subject to conflicting rulings regarding their rights under the agreements. Accordingly, exceptional circumstances exist justifying special concern about piecemeal litigation. This factor weighs strongly in favor of a stay.

### 4.      Order of Jurisdiction

Under this factor, the court evaluates the order in which jurisdiction was obtained. However, courts apply this factor in a "pragmatic, flexible manner," assessing priority "in terms of how much progress has been made in the two actions." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21.

Plaintiffs filed the Louisiana action on May 29, 2015. (RJN, Ex. 3.) They filed the present action on March 28, 2016. [Dkt. 1.] Thus, the Louisiana court obtained jurisdiction first. Plaintiffs argue, however, that "[v]ery little substantive activity has occurred in the Louisiana [a]ction since it was filed." [*See* Dkt. 23 ("Sweeny Decl.") ¶ 9.] "At the outset of the Louisiana [a]ction, [Plaintiffs] filed a petition for a preliminary injunction and appointment of a temporary receiver or liquidator, but the hearing on it was continued indefinitely to accommodate for mediation." [*Id.*] "Only limited discovery has been initiated in the Louisiana [a]ction." [*Id.*] Nonetheless, the present action has made even less progress than the Louisiana action. Aside from the present motion, no substantive activity has occurred in the present action. Defendants have not even yet answered the Complaint, let alone conducted any discovery. Thus, even when viewed flexibly, the Louisiana action has progressed further than the present action. This factor favors a stay.

### 5.      Rule of Decision

This factor evaluates whether federal or state law provides the rule of decision on the merits. "[A]lthough the presence of federal-law issues must always be a major consideration weighing against surrender of jurisdiction, the presence of state-law issues may weigh in favor of that surrender only in some rare circumstances." *R.R. St. & Co.*, 656 F.3d at 980 (internal quotation marks and alterations omitted). "[R]outine issues of state law" such as "misrepresentation, breach of fiduciary duty, and breach of contract" do not present such rare circumstances. *Travelers Indem. Co.*, 914 F.2d at 1370.

Both Parties agree that the present action involves state law claims. (Mot. at 13; Opp'n at 14.) However, this action involves only "routine" state law issues such as breach of contract and state tort principles. Accordingly, the state law nature of this action does not present the rare circumstances sufficient to warrant a stay. This factor is neutral.

### 6.      Adequacy of State Court

Plaintiffs argue that the state court action would not protect their rights because neither Universal nor SoundExchange is a Party in the state court action, meaning that Plaintiffs cannot obtain relief against these Parties via the state court action. According to Plaintiffs, "[t]he state court

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2096-GHK (JCx) | Date | July 29, 2016 |
|---|---|---|---|
| Title | *Young Money Entertainment, LLC, et al. v. Universal Music Group, Inc., et al.* | | |

proceedings will not adequately (or at all) protect Plaintiffs' rights for the simple reason that the claims in this action are not asserted in the Louisiana Action." (Opp'n at 15.) First, Plaintiffs miss the point. This consideration is most important, and favors federal jurisdiction, when the state court is unable to protect Plaintiffs' federal rights. *See Holder*, 305 F.3d at 869 & n.5 (reasoning that a stay was improper where a plaintiff could not assert his federal Hague Convention petition in state court because the state court "probably [did] not have jurisdiction to hear it"). Because only state claims are implicated here, this factor is unhelpful. *See ScripsAmerica, Inc. v. Ironridge Global LLC*, 56 F. Supp. 3d 1121, 1152 (C.D. Cal. 2014) ("[B]ecause these claims involve state law issues, this [adequacy of state court] factor is of little or no weight here."). Second, Plaintiffs operate from the faulty premise that if they proceed with the Louisiana action, they will be precluded from obtaining any available relief from the Defendants here. That is simply untrue. A stay does not prevent Plaintiffs from returning to this action to assert claims they may have against these Defendants once the rights and obligations of the Parties to the various agreements between Plaintiffs and Cash Money (which does not include these Defendants) are determined.

### 7.    Forum Shopping

"Forum shopping refers to '[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard.'" *R.R. St. & Co.*, 656 F.3d at 981. Forum shopping "weighs strongly in favor of abstention." *Nakash*, 882 F.2d at 1417.

Universal argues that "Plaintiffs [] have asserted substantially similar claims in three different forums in an apparent attempt to avoid litigating these issues in their contractually-selected Louisiana forum." (Mot. at 13.) Universal notes that Plaintiffs brought an action similar to the Louisiana action in the Southern District of New York prior to commencing the Louisiana action. (*See* RJN, Ex. 1.) The Plaintiffs voluntarily dismissed the New York action prior to filing the Louisiana complaint. (*See id.*, Ex. 2.) According to Universal, this evidence, coupled with Plaintiffs' filing of the allegedly substantially similar present action in California, constitutes forum shopping. However, Universal's arguments in this regard are too speculative to demonstrate forum shopping. Moreover, Plaintiffs have filed the present action in Universal's home forum, which strongly undercuts Universal's forum shopping allegations. Therefore, this factor is neutral.

### D.    Balance of the Factors

Although most of the relevant *Colorado River* factors are neutral, the concern for piecemeal litigation and the parallelism between the actions cut strongly in favor of a stay. Additionally, the order of jurisdiction weighs slightly in favor of granting a stay. No factor favors declining a stay. Accordingly, we conclude that the balance of the *Colorado River* factors favors granting a stay.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

## CIVIL MINUTES - GENERAL

| Case No. | CV 16-2096-GHK (JCx) | Date | July 29, 2016 |
|---|---|---|---|
| Title | *Young Money Entertainment, LLC, et al. v. Universal Music Group, Inc., et al.* | | |

An additional concern convinces us that staying this action is in the interest of wise judicial administration. Under Federal Rule of Civil Procedure 19(a), a party is necessary[9] if, among other things, "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i). Because resolving the present action will require us to determine certain rights Plaintiffs—and correspondingly Cash Money—have under their various agreements, disposing of the present action in Cash Money's absence would impair or impede Cash Money's ability to protect its interests under the various agreements with Plaintiffs. Thus, if Cash Money had "claim[ed] an interest relating to the subject of the action," it would be a necessary party under Rule 19(a)(1)(B).

Nevertheless, there is no evidence that Cash Money has "claim[ed] an interest," in the present action as that requirement has been construed by the Ninth Circuit. "Joinder is 'contingent . . . upon an initial requirement that the absent party *claim* a legally protected interest relating to the subject matter of the action.'" *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) (emphasis in the original) (quoting *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983)). Thus, "unless the absent party has actually claimed it has a legally protected interest in the action, [it] cannot be deemed a necessary party under Rule 19." *Lopez v. Fed. Nat'l Mortg. Ass'n*, 2013 WL 7098634, at *6 (C.D. Cal. Oct. 8, 2013) ("[Defendant] has not shown that [a third-party] has claimed an interest in the subject of this action and has accordingly failed to show that [the third-party] is a necessary party."); *see also In re Wells Fargo Residential Mortg. Lending Discrimination Litig.*, 2009 WL 2473684, at *2 (N.D. Cal. Aug. 11, 2009) ("Here . . . [defendant] fails to show the Brokers have ever claimed an interest in the instant action. Accordingly, because 'a claim of interest' by the absent party is 'required,' and no such claim has been made, [defendant] has failed to show that either of the Brokers is a necessary party under Rule 19(a)(1)(B).").[10] Universal has made no showing[11] that Cash Money claimed any interest

_____

[9] "As of December 1, 2007, Rule 19 no longer refers to 'necessary' or 'indispensable' parties. Instead, it refers to 'persons required to be joined if feasible' and persons in whose absence, if they cannot be joined, the action should not proceed." *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1077 n.1 (9th Cir. 2010). However, "[t]he advisory committee notes indicate that the 2007 amendments to the civil rules were merely stylistic." *Id.*

[10] Courts have expressed doubt regarding the wisdom of this interpretation of Rule 19(a)(1)(B). *See Zacharias v. U.S. Bank N.A.*, 2014 WL 4100705, at *8 & n.6 (N.D. Cal. Aug. 20, 2014) ("The Court is skeptical that this is the best reading of Rule 19 . . . . As other courts have noted, the Ninth Circuit's requirement that an absent party affirmatively claim an interest in the subject of the action is often in conflict with the underlying purposes of Rule 19."); *see also Medrano v. Caliber Homes Loans, Inc.*, 2014 WL 7236925, at *5 n.2 (C.D. Cal. Dec. 19, 2014) ("Even though it is in accord with the Rule's plain text, the requirement that an absent party affirmatively claim an interest in the action before a court can require its joinder has been criticized as strange."). "[B]ut for better or worse it appears to be the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

E-Filed

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2096-GHK (JCx) | | Date | July 29, 2016 |
|---|---|---|---|---|
| Title | *Young Money Entertainment, LLC, et al. v. Universal Music Group, Inc., et al.* | | | |

relating to the subject of the present action.[12]  Thus, Universal has failed to show that Cash Money is a necessary party in this action under Rule 19.

This outcome creates an inequitable situation for Cash Money.  Resolving the present action without Cash Money would impair its ability to protect its interests, yet we are prohibited from deeming Cash Money a necessary party because it has not claimed an interest in the action as required by the Ninth Circuit's interpretation of Rule 19(a)(1)(B).  As this somewhat peculiar outcome is prejudicial to Cash Money, we conclude that it weighs heavily in favor of granting a *Colorado River* stay.

In light of the foregoing, a stay of the present action pursuant to the *Colorado River* doctrine is warranted.  Accordingly, Universal's Motion to stay this action pending the resolution of the Louisiana action is **GRANTED**.

### III.   Universal's Alternative Motion to Dismiss

Because we have granted Universal's Motion to stay the present action,  Universal's alternative motion to dismiss under either Federal Rule Civil Procedure 12(b)(7) or the doctrine of forum non conveniens is **DENIED as moot** at this time.

### IV.   SoundExchange's Motion to Join Universal's Motion

SoundExchange moves to join Universal's Motion.  SoundExchange contends that we should allow this request because (1) SoundExchange shares Universal's positions with respect to the Motion's substantive issues and arguments; (2) judicial efficiency is enhanced by such joinder as it prevents

---

law of the Ninth Circuit."  *Zacharias*, 2014 WL 4100705, at *8.

[11] The moving party—here Universal—carries the burden of persuading the Court that the nonparty—Cash Money—is a necessary party under Rule 19.  *See Unicolors v. Macy's, Inc.*, 2015 WL 1020101, at *2 (C.D. Cal. Mar. 6, 2015) ("The burden of proof is on the party moving to dismiss for failure to join an indispensable party.").

[12] Plaintiffs provide an email from Cash Money's counsel Edward R. Grauer to Plaintiffs' counsel Ronald Sweeney in which Grauer states, "Cash Money Records has no rights to Young Money SoundExchange royalties."  (*See* Sweeney Decl., Ex. A.)  Plaintiffs assert that this email shows that "Cash Money has acknowledged to Universal and SoundExchange that it has no right to or interest in the label performance royalties allocable to Plaintiffs." (Compl. ¶ 37.)  However, this email is inadmissible hearsay when used to support Plaintiffs' argument in this action.  Moreover, the credibility of the email is suspect, as (1) it was sent over two years ago, on July 25, 2014; and (2) Cash Money is in a adversarial position with both Universal and Plaintiffs in various matters pertaining to the present action and the Louisiana action.  Thus, we decline to afford this email any evidentiary weight.

E-Filed

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2096-GHK (JCx) | Date | July 29, 2016 |
|---|---|---|---|
| Title | *Young Money Entertainment, LLC, et al. v. Universal Music Group, Inc., et al.* | | |

duplicative briefing; and (3) Plaintiffs would not be prejudiced by the request.  [*See* Dkt. 16 at 3-4.]
Plaintiffs do not set forth any argument to the contrary.  Accordingly, SoundExchange's Motion to Join
Universal's Motion, [Dkt. 16], is **GRANTED**.

**V.      Conclusion**

      SoundExchange's Motion to Join Universal's Motion is **GRANTED**.

      Universal's Motion to stay the entire action pursuant to the *Colorado River* doctrine is
**GRANTED**.  We hereby **STAY** this action until the Louisiana action is resolved.  The clerk is directed
to administratively close this matter pending further order from the Court.

      Universal's alternative Motion to dismiss this action is **DENIED as moot** at this time.[13]

      **IT IS SO ORDERED.**

                                                          :  _____

                             Initials of Deputy Clerk        PS

---

[13] Any remaining evidentiary objections are **DENIED as irrelevant** to our resolution of these
Motions.